Good afternoon, Your Honors, and may it please the Court, I'm Mark Schechter, and I represent Appellant David Wong in his capacity as Successor Trustee of the Anaplex Corporation Employee Stock Ownership Plan, which for the sake of expediency I'll refer to as the ESOP. The ESOP is a plan subject to ERISA, and I'd like to reserve three minutes for rebuttal, if I may, Your Honor. We will be relying primarily on our written briefing in this case. However, a very quick summary of the fact chronology behind the case will better shed light on the legal issues. So, if I may, on April 28, 2015, Bernie Kerper, as the then ESOP trustee, bought shares from himself in a non-arm's-length transaction for a price now known by Appellant Mr. Wong to exceed fair market value, or the price at that point in time exceeded fair market value. Mr. Kerper passed away in August 2015, approximately four months after that. Mr. Schechter, I think you could excuse me. This is Judge Block. Can you hear me? I'm not so sure. I can, Your Honor. So, let me interrupt you. Give us some credit of having an understanding of the basic facts of the procedural history, but you are basically arguing here that what happened in the state court and this agreement that was entered into, etc., is of no moment in the nation. Have maybe a second bite of the apple for two basic reasons. Tell me if I have it right. First, you deny knowing that Mr. Kerper had defaulted on the million-dollar-plus loan from Anaplex to cover personal expenses. I think that's one of your contentions, right? That is correct, Your Honor. And the second argument, as I understand your somewhat prolix papers, is you claim Turner, the appraiser, did not know about the EPA violations and the hundreds of thousands of dollars in legal fees which affected his valuation of the shares. Am I correct that those are the two main prongs of why you think that you should be entitled to maybe arguably a second bite of the apple? Well, Your Honor, I wouldn't necessarily call it a second bite of the apple. Whoever you want to fake it, those are basically your arguments. Okay, those are the arguments as to why the ESOP paid more than fair market value. Well, I have a few questions in each of those arguments. Let's talk about the default first. Weren't those loans made years before the April 2017 agreement? Yes or no? Was the loan, Mr. Kerper? Yeah, yeah. My understanding is the loans were made over a period of time. It wasn't a single loan, but it was a series. It was before the April 2017 agreement. Do you agree with that? It was before the April 2017 agreement. Yes, Your Honor. Here's my next question. Isn't it true that they were never paid back? In fact, not paid back for such a long time that the California State Court found the recovery was barred by the statute of limitations. Is that true? That is absolutely accurate, Your Honor. However, the California Superior Court did not find that the notes were barred by the statute of limitations until approximately 10 days after the loan. We can get into the nitty-gritty, but I'm just puzzled about how can you contend now the federal court that those loans, you know, were not known to you and when they seem to need have been in existence for a long period of time and that they were not paid back for a long period of time. I don't understand your logic. Let's see if I can go back, Your Honor, and explain at the time of the transaction, the self-conflicted transaction of Mr. Kerper entered into. He did not tell the appraiser that the statute of limitations had run on the notes that he had in fact owed the corporation. My client was not a trustee of the plan at that point in time, had no part in that transaction. It was a self-conflicted transaction. It was only later once the Superior Court made a finding that those notes repayment was barred by the statute of limitations that my client realized that there was now an absolute possibility that the ESOP overpaid. And counsel, your client put in a declaration in the op to the motion to dismiss saying that he had no idea until sometime after May 10, 2017 that the appraiser didn't know. That is absolutely correct, Your Honor. The appraiser did not know until the after this. And the appraiser put in a declaration to that effect as well, yes? Yes, I believe the appraiser did put in a declaration to that effect. Let me proceed to the second question. Your claim is that the appraiser did not know about the EPA violations and the hundreds of thousands of dollars legal fees which affected his valuation of the shares. Am I correct or not correct that these violations occurred back in 2013 and then Anaplex received notice of the EPA issues in 2015, leading to hiring of counsel, legal fees, and paying of the EPA fine shortly thereafter? I believe that the timing may be accurate, Your Honor, but again, the only person in the position to take any action would have been Mr. Kerper who was conflicted. He was the seller and the buyer. When did your client become the trustee? Right before the execution of the NRA, which was... The NRA was April or May of 2015? No, actually it was April 17, 2017. 17, yes. It was repayment. I'm sorry. The note was 2015, but yes. It was 2017, yes. So Judge Block, to answer your question, my client became the trustee in April of 2017. Before that, he had no responsibility or power to do anything. Of course, this is what knowledge you had, but I have one last question that I'll keep quiet. You also claim that your adversary knew that federal litigation would follow the state court litigation. Do you have any evidence to support your position that the federal litigation would follow the state court litigation? The same lawyers handle the underlying state court litigation. Are there any emails, letters, et cetera, to establish this? I find nothing to support that whatsoever. It seems that all you folks were really very much involved with the state court litigation. You came to a specific dollar figure of $900,000. Where can you tell me that it was understood that there would be subsequent federal court litigation? Your Honor, the ESOP was not a party whatsoever to the state court litigation. I was counsel to the ESOP. We were not involved in the state court litigation, except to the extent we were asked to execute an acknowledgment of the amount due as of that date to the best of the ESOP trustees' knowledge. You were there. You were his party throughout that whole proceeding. You were there. We were not. We were not. The corporation was a party, and it was defunded. As the attorney, weren't you there representing the $900,000? Your Honor, we represent the ESOP. The ESOP was not a party to that litigation. We never appeared as a counsel in that litigation. The corporation was represented by an attorney named Ryan Hirota. You knew nothing about this until way after when the litigate said we should go to the ESOP. We were aware that there was litigation pending in state court, but at that point in time, my client was not the trustee of the ESOP. The only thing that we were asked to do was to, as of that date, confirm the amount that we believe was due on the ESOP note. We weren't warned. Counsel, I want to go to that point as to what this, in your view, this note repayment agreement actually does, because it's a very strange agreement to me. It has no releases in it. It has no waivers. It has a provision that the parties aren't settling everything so that there can be future claims, and it appears that the only thing that the other side was going to do was going to dismiss, apparently without prejudice, four claims in the state court lawsuit and leave in the fifth claim dealing with the note. I agree. There's nothing in here that appears to me to be an unconditional promise to pay no matter what, but what's the purpose of this agreement if nobody's waiving anything and no one's agreeing to dismiss anything with prejudice? Yeah, I agree, Your Honor. As far as the agreement itself, I don't see it having added anything more than the original promissory note that had already been executed. So why would you sign this? I mean, this may well mean that there are disputed issues of fact that couldn't be resolved on a motion to dismiss, but the ESOP signed this, right? ESOP did sign it, yes, because as of that date, they were asked to confirm as of that date what they believe the outstanding balance due on the promissory note was. For what purpose? There hadn't been payments on the note. So this is like a letter saying like the bank would send, you owe me $8,000 as of today, and it's like a three-page agreement as to repayment. That's the title of it, but all it was doing was the same as the bank telling me what I owe. Right. Essentially, that's it, Your Honor. No repayment agreement does not alter the terms of original transaction documents. All it does is put the balance due on a new schedule so that they would start making payments, agree to make payments that hadn't been made, they had been in arrears, and that they were going to agree to start making payments assuming they had the cash. However, that agreement also reserved to the ESOP any rights it may have specifically under the underlying transaction documents and specifically in the recital. This does not resolve all the claims because if through, for example- So counsel, I'm not entirely convinced that that's necessarily a reasonable reading of this agreement, but as far as I can tell, correct me if I'm wrong, the other side, the defendant in the law, did she ever put in a declaration as to what she thought this agreement that she signed meant in this lawsuit? Was there ever a declaration from her as to her intent in signing this? As to who? The defendant. No. No. Mrs. Gerber, no. I do not believe there was a declaration. But the only declarations regarding the motion to dismiss were your client and the appraiser in the op, but there was no declaration in the motion. That is correct, Your Honor. If I may, Your Honor, if I may reserve the balance of my time for worthlessness, there's nothing that I've seen in the record that tells me what you think they were worth and why they're worthless. Well, Your Honor, that was a question of fact, what they were worth, which would have been come out and prove that trial, that there was a breach of duty. I mean, subsequently, we did get evaluation. We know now what they're worth, but- Right now, I believe the appraiser came back with $43,000 for the value of the shares at the ESOP. I don't see that in the record, but whatever. Go ahead, I'm sorry. If Your Honor, is my remaining time reserved? That's fine. I'll give you a little bit of extra time as well. So let's hear from Ms. Papazios, if I'm saying that correctly. Apologies if I'm not. Good afternoon, Your Honors. May it please the Court. Shannon Papazios with Farizzo & Farizzo on behalf of the appellee, Danette Flynn-Kerper. I'd just like to respond as to the questions that were recently posed to ensure fluidity of discussion and analysis here. With respect to the purpose as to why that note repayment agreement was entered into, the reason was many-fold. But the first primary reason was that during the process of discovery in the state court litigation, the ESOP was very much involved, and Mr. Schechter in representing the ESOP in that action to provide my client with documentation reflecting the prior note transactions and the payment history. So within that process, we had issued a subpoena to the third-party administrator and Mr. Schechter's office. He cooperated in providing all of the documentation that we needed. Counsel, did your client or anybody else put in a declaration based on personal knowledge as to what the purpose of the loan repayment agreement was? I submitted a declaration in support of the motion to dismiss. And you attached some documents, right? Yes. And additionally, I also provided the settlement offer that we served subsequent to the agreement, which is located in the record at ER 89. And that shows the remaining matters that stayed pending after the agreement was executed, which is why we did not have the typical 1542 releases and other 360 shares, I believe it is, that we were negotiating a final buyout on. Additionally, this transaction was not in repayment. It was in default. Let me ask you this, Ms. Patterson. I understand your position, but I want to know what your specific response is to your adversary's assertion that he didn't know about the material information, namely the EPA investigating even more than years before, the legal fees, et cetera, when entering into the notary payment agreement to resolve the stakeholder litigation. Do you report that anything at all that would support your position that that's an irrelevancy and we should not flush that out by remanding because there are material issues of fact and dispute? As a preliminary matter, we went in detail in our brief through specific sites to the record showing knowledge that was known by not only the appellant David Wong, who not only is involved in this case as the current trustee of the ESOP, but he has been on the board of directors for this corporation for many, many decades. So he is intimately aware of the dealings with the corporation. He was also on the committee that reviewed this transaction at issue in 2015. Those documents are in the record. Let me interrupt. This is a motion to dismiss and we're talking about all sorts of factual assertions back and forth where people knew what they did not know. Is that the type of thing we should deal with in an appeal when we're talking about a motion to dismiss? Well, I think that the fundamental issue here is can you apply a stopple to allow a party to defend herself in a lawsuit when something has been agreed upon? So when we look at what was what that note value was, he agreed to repay it. So where does it say in the agreement that there was an agreement to repay without condition and waiving claims not to point me to that? There's no waiver as to an adequate consideration or fair market value argument, but there is confirmation of the principal due and an section two of the agreement. So what does it mean when it says in the agreement the parties hereby acknowledge and agree that this agreement does not fully settle all outstanding claims existing between the executor, the ESOP and Anaplex Corporation? Tell me as a matter of law what that means. As a matter of law, there are reserved issues that remained pending in the litigation and we still had a trial date on calendar to resolve those issues. So how do I know how do I know from reading this agreement what what was reserved and what wasn't? Well, I think that the fact that they are requesting a reduction in the note value and the fact that we expressly confirmed what that value is shows that is not something that was reserved. We expressly had an agreement that's what they owed and they would pay it. My client would not have. In section two at ER 125, 2B talks about future payments but also says these payments shall continue to be made until further agreement of the parties or order of the court. Why would there be an order of the court if there wasn't going to be further litigation? Yes, thank you, your honor. The full sentence says these payments shall continue to be made to executor until further agreement of the parties or order of the court and the reason for that provision is at the time this agreement was entered into my client was administering her husband's estate as executor and she was entering into the agreement in that capacity but the probate is temporary and once the assets would be distributed by the probate court to her as the sole heir of the estate, the future payments would be made to her individually not as executor. So how do we how do we know that's what that means? Well, I think we have to read every word of that sentence to executor so it if we excluded to executor these payments shall continue to be made until further agreement for the parties or order of the court perhaps there's ambiguity but the fact that we include to executor I think lends credence to the fact that it was included for that reason to show that we would need the payments in the future to be made individually. I don't understand why that would be though I mean if the payments are going to her whether as an individual capacity or as the executor right what why is it relevant? Because during the pendency of the probate estate she was required to accept those payments on behalf of the estate and inventory them in the probate matter and then distribute them to the heirs so she has to obtain the payments as executor during that time period but once the order for final distribution issued by the probate court the payments would be made to her individually and due to the fact that this agreement covered a lengthy period of time the probate would close during the payment period. So is there anything in this agreement that describes that? The recitals in section C show the date of death and that it was in repayment status and D discusses just the litigation itself I don't believe that there's a lengthy history in terms of the probate action in the agreement and again this was not a complete final agreement in terms of every single term between these parties because we had other issues and that is result that's discussed in my letter at ER 89 as to those remaining issues which is why we didn't have the complete release and waiver. So the district court in the dismissal minute order says defendant in turn agreed to dismiss her state court claims against ESOP. Is it correct that there were no state court claims against the ESOP? The ESOP was not a formal party to the state court action yet but was an integral party as to the entire negotiations and but for this agreement would have been brought into the action. So were you agreeing to dismiss the first four counts with prejudice or without prejudice in this agreement? I would have to review the terms of the agreement I don't recall off the top of my head. Because ultimately you dismiss them without prejudice right? Yes. And so presumably that's what your client took the agreement to mean that your obligation was to dismiss them without prejudice. The reason that the request for dismissal was without prejudice is because it was not limited to the first four causes of action. It was as to the entire action and at that point in time there had been no payments made under the April 2015 agreement. So we were not dismissing a breach of contract claim as to that transaction given it remained in breach. But you weren't doing anything about that claim anyway the other four claims why would they be dismissed without prejudice? The other four claims were just included in the same request for dismissal. We had a trial date on calendar and we didn't want to confuse the court. It was just in terms of efficiency to file one request for dismissal. But the fact remained that we needed to preserve our rights on the fifth cause of action related to the April 2015 transaction. Counsel that that's that's puzzling to me because if your view is that this agreement was a settlement of that and that they were forever agreeing to pay on the loan why wouldn't you be dismissing the claim count five that went to the loan? Isn't the fact that the agreement didn't cover count five doesn't that at least suggest that your your proposed reading of this agreement that this was a full and final settlement of the loan payment terms is incorrect? What am I here? I didn't want that to provide them with an argument to say that this note repayment agreement was somehow not binding as to that transaction and only the April 2018 2015 documents itself would govern. So so there was so after this was signed in your client's view there was a full complete settlement agreement to pay and you got to pursue count five also seeking payment. Not necessarily it was that we had an agreement that revised the note terms so the note was still in breach but we had an agreement confirming the value owed confirming that they would repay it on differing terms which the ESOP requested because they did not have the cash flow to make the large lump sum payment that was going to come due in April of 2017. So they actually requested this agreement and requested to be involved in the negotiation of all of these matters involving these ESOP transactions. So then so then the district court a key finding the district court made is that the ESOP allegedly used the assurances to of the reason the judge granted your motion but if I'm hearing you correctly that this wasn't to entice your client to dismiss her state court lawsuit because she didn't have an obligation to after this was signed. What am I missing there? Well maybe I'm I misspoke I apologize your honor but this agreement was the reason we dismissed that lawsuit because but for this agreement we would have had to continue under the original terms of those note on the breach claims because of this agreement we had assurances that they were going to continue to start making the payments on that note and that we would have longer periods of time on our breach statute of limitations. That's why the action was dismissed. We have any indication that they understood that that was the bargain being reached. It seems like the parties have very different understandings of what this NRA was. Well the entire time that we had this state court action pending I received repeated assurances from the ESOP's attorney that the payments would be made to my client that they had EPA lawsuits that they were dealing with they were waiting for insurance to be paid for. Insurance cost of defense to pick up litigation fees and that they would then start making payments. So at no point right before the dismissal I understand there was some further communication which indicated that there would be federal litigation. That was the first time that I ever received any indication that they were considering modifying the note or filing a federal lawsuit and the agreement had already been signed whether or not we filed the dismissal before or after she was obligated to file the dismissal and at that point the only remedy for breach would be for my client to receive a proportionate share a proportionate number of the shares back and the ESOP's representations were the company was at that point not profitable and the shares would be worthless. So how should we understand the delay in filing the dismissal? So I think it was supposed to happen within like a week and instead it was five months later. What are we supposed to make of that? One of the issues was we were still trying to have a global resolution of the remaining issues that are indicated in my settlement offer letter. The other is is my fault I was on maternity leave. Counsel I have one unrelated question. You've argued that equitable estoppel should not be barred in an ESOP case because you're the defendant not the plaintiff. That's one of your arguments. Why does that matter when this is essentially a preemptive kind of a lawsuit and if they hadn't filed this lawsuit suing you, you'd be filing a lawsuit suing them. So why should the positioning of the parties matter for whether equitable estoppel can be asserted against an ESOP as a matter of law? So first the primary issue is when we look at the basis of ERISA preemption and why Congress enacted ERISA preemption, it needs to relate to plan benefits. So as a fundamental issue in this case we're not dealing with a typical ERISA case. We are not dealing with plan benefits and we are case law that cited in the opening brief is all related to a plan participant suing a plan or a trustee of a plan to extract benefits. This case is very distinguishable. My client is defending against a claim by the plan not as a plan participant and not related to plan benefits. She is asserting an equitable defense to a claim asserted against her and due process of law requires that she be allowed to assert equitable defenses when equitable claims are asserted against her. That's in the Donovan v. Robbins matter. Additionally... Do you really understand these as claims against her late husband? Beg your pardon? I mean she's really standing in the shoes of her late husband, isn't she? In terms of the heir of the estate who received this note. So she's not like an unrelated third party if we understand her to really be in his shoes, correct? Unrelated in terms of knowledge of the transaction or knowledge of what was allegedly occurring at the corporation. Yes, she lives in South Dakota and was never involved in the day-to-day operations of this business. But she happens to now be in the position of where he would have been if he hadn't unfortunately passed away. Correct, in terms of enforcing the note. Okay, we've taken you over your time. If my colleagues don't have further questions, then we'll give two minutes for rebuttal to Mr. Schechter. I have no further questions. Thank you, your honor. I have undoubtedly significantly different interpretation of the phrase further order of the court or order of the court as it relates to the NRA agreement. Because from our perspective, it related to the fact that if the pending superior court, probate court action on whether or not that million dollar note was collectible, there may be further action taken by the ESOP trustee relating to the overpayment that occurred on the original ESOP transaction. Counsel said no, and I related to, you know, she believed that factually it related to whether or when to Mrs. Kerper wearing a hat as executor or individually. I totally disagree with that characterization. We carefully left open in the agreement and including in the recital that it didn't resolve all the claims between the parties that the agreement did not bar a subsequent action by the trustee to attack the original transaction and the purchase price if it was found that the ESOP overpaid as of April 28, 2015 during that conflicted transaction. Nothing in that note repayment agreement waived any right to do that, nor did it ratify or confirm that that amount that was payable represented fair market value. Counsel, would you agree that if it were determined in this action that the ESOP was in fact in this agreement contractually agreeing to pay the full amount of the note without regard to anything else, and it was a settlement and a full and absolute agreement, that then this issue of estoppel, and they can't assert estoppel, would be irrelevant because it would simply be the ESOP trustee making that kind of agreement as a normal contractual matter if that were at some point the determination in the lawsuit? I'm not quite sure if I followed your question, your honor, but basically if there were a determination that this were a full and complete agreement to pay and that were made either as a matter of law or by a trier of fact because of ambiguity if that's the way it went and it had nothing to do with estoppel, then the ESOP would basically be stuck at that point, right? I don't think necessarily, your honor. I think the ESOP could enter into an agreement to pay. In fact, ESOP did enter into an agreement in April of 2015 to pay, but that did not prevent, in fact, the stock purchase agreement itself reserved the right to challenge that purchase price. And if a court of competent jurisdiction, which the Superior Court of California was not, found that the ESOP were overpaying or that the price paid was more than fair market value, there would be an adjustment to the note or a repayment by the seller that specifically in the stock purchase agreement, nothing in the NRA note repayment agreement voided or overrode anything in the original transaction documents. In fact, the original transaction documents... So you're pointing to a different contract, but not pointing to ERISA or the principles of ERISA, for your argument? No, your honor. I'm referring to the original note, I'm sorry, the original stock purchase agreement between the ESOP trustee and the seller had that provision in it specifically that said that if there was a finding by a court of competent jurisdiction, which we were attempting to achieve by filing in the district court when Judge Otero found that we... But that purchase agreement is another contract. You're not going back to the terms of the ERISA plan for any of your argument that I've heard you make. No, we are, your honor, because in fact, the terms of the ERISA plan itself prevent the trustee from making a transaction that is a prohibited transaction or paying more than adequate consideration for the shares itself. So why wasn't that your answer to Judge Bennett? I'm confused about whether you're trying to use ERISA or whether you're just using the one contract versus another. Well, we don't perceive this note repayment agreement as adding anything. It incorporates by reference the transaction documents. No provision of ERISA is waived in that agreement. In fact, it leaves open the door for other claims, for claims between the parties to proceed. Nothing in that agreement required the defendant to dismiss this particular claim. They were only dismissing claims one through four. They ended up dismissing this claim relating to this note. We never asked for that. In fact, ESOP got nothing out of that agreement. They got absolutely not a single thing out of that note. All right, sorry, Judge Clark has a question. I lost visual contact, so I'm only able to hear. So I don't know if you can see me. I can't see anybody. I just want to know, bottom line, this is a very confusing cup of tea. We've gone back and forth. But basically, you're in federal court because you claim that Mr. Kerper did not have knowledge of the default, and he had no knowledge about the EPA violations. Isn't that why you're here? Mr. Wong, not Mr. Kerper. Mr. Kerper, I believe Mr. Kerper clearly had knowledge of the default, and he was in a subpoena. My apologies, okay? So let's say the issue is really whether or not, in the context of a 12B600 motion to dismiss, those are factual matters that really preclude granting relief at this particular stage of the proceedings, because you're claiming this knowledge is really what's paramount here, and that we have to go forward with this litigation and remand. Is that your basic position? Your Honor, I agree that this is rife with factual issues to be resolved before a motion for summary judgment or a motion to dismiss could be entertained at all. Let's stop, and then we can't do it on this particular record, is your position, right? Yes, Your Honor, that is absolutely correct. Okay. I would just like to— We're way over your time, so I think I need to thank you both for the helpful arguments. This case is submitted, and we are adjourned for the day. Thank you both very much. Thank you, Your Honor.
judges: Friedland, Block, Bennett